

# WARSHAW BURSTEIN, LLP
ATTORNEYS AT LAW

555 FIFTH AVENUE
NEW YORK, NY 10017
TELEPHONE: 212-984-7700
FACSIMILE: 212-972-9150
WWW.WBCSK.COM

MARTIN R. LEE, ESQ.
DIRECT DIAL:  212-984-7868
EMAIL:  MLEE@WBCSK.COM

December 7, 2015

**VIA ECF**
The Honorable Judge Richard J. Sullivan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
New York, NY  10007

> Re.:   **Jessica L. Wahl v. Sterling & Sterling Inc., et al.**
>        **Civil Action No. 15-cv-06522 (RJS)**

Dear Judge Sullivan:

This office represents plaintiff Jessica Wahl, the corporate defendant's former employee. We respond to Mr. Widell's letter of dated November 19, 2015.

Some points will be mooted as it is noted that while we do address, to some extent, arguments raised by adversary counsel, plaintiff intends amending her complaint pursuant to FRCP 15(b), in which, *inter alia*, she will omit Title VII claims against the individual defendants.

The Charge of Discrimination, as found in Complaint, Exhibit A, alleges "continuing action", thus, the amendment will also address discriminatory acts subsequent to April 17, 2014.

A.     General Background

Defendant Sterling & Sterling Inc. ("SSI"), an insurance broker and risk management corporation, hired Jessica Wahl ("plaintiff") in May 2011 as its Senior Vice President, Manager of the Claim Department and Essential Services and Programs, and Third-Party Administrator. Plaintiff was promoted to Risk Management Services Practice Leader within weeks of her employment and supervised seventeen employees. Defendant David Sterling ("Sterling") is the owner of SSI. He and SSI's revenue producers (the "Producers") are responsible for producing clients on SSI's and Sterling's behalf. During the relevant time period, Jessica Wahl's supervisor was defendant Leslie Nylund ("Nylund"), a woman who was Vice-Chair of the Company, and upon information and belief had become President in late 2012.

The Sterling Defendants created a workplace which was so pervaded with discriminatory intimidation and hostility that it altered the conditions of plaintiff's work environment. The hostility directed at plaintiff came not only in the form of slurs, insults, jokes and demeaning comments about women and/or single mothers, but also, unwanted physical contact and sexual advances. After plaintiff

**WARSHAW BURSTEIN, LLP**

The Honorable Judge Richard J. Sullivan
December 7, 2015
Page 2

reported these issues to the Sterling Defendants, she was moved into a smaller office, she was placed on warning about losing her position and her bonus was lowered, all in acts of retaliation for her complaints.

B.   The Sterling Defendants' Motion to Dismiss

They contend that certain claims should be dismissed. As to their claim that plaintiff's Title VII claims are time barred, such will be addressed in the amended complaint. In any event, the NYSHRL has a three year statute of limitations. Notwithstanding the claim that plaintiff's hostile work environment fails adequately to allege discriminatory animus. As set forth below, the complaint is replete with specific instances where such is alleged. The last allegation of the Sterling Defendants, that plaintiff's constructive discharge claim should be dismissed because she has not actually been discharged, ignores the fact that for a constructive discharge, an employee does not have to have been terminated by an employer to possess such a claim.

1.   The Complaint Adequately Pleads a Claim For Hostile Work Environment

"There is no 'magic' threshold number of harassing incidents that are required. . . to demonstrate a hostile work environment. Rather, a hostile work environment is determined by all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Levitant v. City of N.Y. Human Res. Admin., 625 F. Supp. 2d 85, 97 (E.D.N.Y. 2008) (internal citations and quotations omitted). Hostile work environments are often demonstrated through the culmination of many actions and courts must "consider the totality of the circumstances." Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997).

Here, the Complaint is replete with specific instances of discriminatory conduct. For example, one of the Producers, Jonathan Friedman demeaned and berated plaintiff and threatened to kill her and was then told by Nylund that "Friedman knows that you are single mothers. . . [you] need to be more careful around him" (Compl. ¶ 19-24). This caused plaintiff to become anxious, depressed and to suffer sleep deprivation (Compl. ¶ 30). Another Producer, Robert Trinagel often greeted plaintiff with unwelcome embraces, strong hugs, kisses and would caress and massage her and told her that he loved her (Compl. ¶ 35-38). When she objected to his advances he took steps to hurt her business revenue (Compl. ¶ 44-49). Trinagel also would repeatedly punch plaintiff, ignoring her requests to stop (Compl. ¶ 53-56). Additionally, another Producer, Thomas Clementi would demean and shout at plaintiff and other female claim consultants on a regular basis (Compl. ¶ 66-79).

The "effect on the employee's psychological well-being," is a crucial factor. Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547-48 (2d Cir. 2010). Thus, evidence indicating psychological harm to a plaintiff due to working conditions at an employer is relevant to the plaintiff's claim for hostile work environment. The Complaint recites that plaintiff's work environment caused her psychological and physical harm (Compl. ¶ 102-107, 121-127, 131, 147).

While the Sterling Defendants argue that acts pertaining to a hostile work environment must pertain to the plaintiff's gender, the Second Circuit has ruled that a claim of hostile work environment can be based on multiple acts of harassment, some overtly sexual and some not. See Kaytor, 609 F.3d at 547-548. Thus, all adverse actions, whether or not they were motivated by discriminatory animus, should be

{916529.2 }

considered when determining whether the environment constituted a hostile work environment. The hostility against plaintiff included demeaning comments about single mothers (Compl. ¶ 15, 24). Gender discrimination also includes adverse employment consequences imposed because of stereotypes about motherhood. See Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 122 (2d Cir. 2004).

    2.    <u>The Complaint Adequately Pleads a Claim For Constructive Discharge</u>

The standard for constructive discharge is when an employer, rather than discharging an employee directly, intentionally creates a work atmosphere so intolerable that the employee is forced to quit involuntarily. Petrosino v. Bell Atl., 385 F.3d 210, 229 (2d Cir. 2004). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." Id. When specific intent cannot be proven, the plaintiff must merely "demonstrate that the employer's actions were 'deliberate' and not merely 'negligent or ineffective.'" Id. at 229-230.

Further, this Court has held that because "the standard for constructive discharge requires a determination of how a reasonable employee would behave 'in the employee's shoes,' the issue of whether a constructive discharge has occurred should generally be left to the trier of fact." Halbrook v. Reichhold Chemicals, Inc., 735 F. Supp. 121, 125 (S.D.N.Y. 1990)(internal citations omitted). Thus, summary judgment should generally not be granted with respect to constructive discharge claims. In addition, the Second Circuit has held that, similar to a hostile work environment claim, actions relating to a constructive discharge claim must be viewed in the aggregate as even if "[c]ertain factors, standing alone, are 'legally insufficient to support constructive discharge,' the various conditions should not be treated as 'separate and distinct rather than additive,' since 'a reasonable person encounters life's circumstances cumulatively and not individually.'" Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 90 (2d Cir. 1996).

Here, the Complaint alleges as a result of the conduct described in the Complaint, the conditions were so intolerable that any reasonable person in plaintiff's condition would have felt compelled to resign as plaintiff did (Compl ¶ 154). The Court must evaluate how a reasonable person, in plaintiff's shoes, would have behaved given her intolerable working conditions. Halbrook at 125.

For the reasons set forth herein, particularly when viewing the facts in her favor, plaintiff has made a prima facie showing for her claims for hostile work environment and constructive discharge (and retaliation -- an issue which was not challenged by the Sterling Defendants) and presented issues of fact that are only appropriately determined by a jury.

                                    Respectfully submitted,

                                    Martin R. Lee