

# WARSHAW BURSTEIN, LLP
ATTORNEYS AT LAW

555 FIFTH AVENUE
NEW YORK, NY 10017
TELEPHONE: 212-984-7700
FACSIMILE: 212-972-9150
WWW.WBCSK.COM

MARTIN R. LEE, ESQ.
DIRECT DIAL: 212-984-7868
EMAIL: MLEE@WBCSK.COM

December 7, 2015

**VIA ECF**
The Honorable Judge Richard J. Sullivan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
New York, NY 10007

        Re.:    **Jessica L. Wahl v. Sterling & Sterling Inc., et al.**
                **Civil Action No. 15-cv-06522 (RJS)**

Dear Judge Sullivan:

      This office represents Jessica Wahl, the corporate defendant's former employee. We respond to Mr. Sestack's letter of November 23, 2015.

      Some points will be mooted as it is noted that while we do address, to some extent, arguments raised by adversary counsel, plaintiff intends amending her complaint pursuant to FRCP 15(b), in which, inter alia, she will omit Title VII claims against the individual defendants.

      The Charge of Discrimination, as found in Complaint, Exhibit A, alleges "continuing action", thus, the amendment will also address discriminatory acts subsequent to April 17, 2014.

A.      General Background

      Defendant Sterling & Sterling Inc. ("SSI"), an insurance broker and risk management corporation, hired Jessica Wahl ("plaintiff") in May 2011 as its Senior Vice President, Manager of the Claim Department and Essential Services and Programs, and Third-Party Administrator. Plaintiff was promoted to Risk Management Services Practice Leader within weeks of her employment and supervised seventeen employees. Defendant David Sterling "(Sterling") is the owner of SSI. He and SSI's revenue producers (the "Producers") are responsible for producing clients on SSI's and Sterling's behalf. During the relevant time period, Jessica Wahl's supervisor was defendant Leslie Nylund ("Nylund"), a woman who was Vice-Chair of the Company, and upon information and belief had become President in late 2012.

      The Sterling Defendants created a workplace which was so pervaded with discriminatory intimidation and hostility that it altered the conditions of plaintiff's work environment. The hostility directed at plaintiff came not only in the form of slurs, insults, jokes and demeaning comments about women and/or single mothers, but also, unwanted physical contact and sexual advances. After plaintiff reported these issues to the Sterling Defendants, she was moved into a smaller office, she was placed on warning about losing her position and her bonus was lowered, all in acts of retaliation for her complaints.

{917617.1 }

**WARSHAW BURSTEIN, LLP**

The Honorable Judge Richard J. Sullivan
December 7, 2015
Page 2

B.     Nylund's Motion to Dismiss

Nylund contends that all of plaintiff's claims against her should be dismissed. As to her claim that plaintiff's claims against her brought under the NYSHRL fail to state a valid claim because she did not actively participate in the conduct giving rise to a discrimination action and that there is no allegation that Nylund engaged in any of the discriminatory acts forming the basis of her claims, as set forth below, the complaint is replete with specific instances where such is alleged. With respect to her allegation that plaintiff's allegations do not support a claim of hostile work environment, as discussed below, the Complaint certainly contains allegations which demonstrate a hostile work environment. As to her allegation that plaintiff's constructive discharge claim fails to state a claim for relief because it does not allege intolerable working conditions, this claim ignores the examples of intolerable working conditions discussed in the Complaint. Nylund's final contention, that plaintiff's retaliation claim against Nylund fails, is wrong because the allegations in the Complaint sufficiently set forth a retaliation claim.

1.     Plaintiff's NYSHRL Against Nylund Are Proper

Nylund's claim that the NYSHRL claims against her are improper because plaintiff "did not allege that Nylund had an ownership interest in Sterling & Sterling or that she had the power to hire or fire her" is untenable. As noted in the Complaint, Jessica Wahl reported directly to Nylund, who was Vice-Chair of the Company, and upon information and belief had become President in late 2012. Of course, it goes without saying, that as President of the Company, Nylund possessed the power to fire the plaintiff. Notably, Nylund's application to this Court does <u>not</u> claim that Nylund did not possess such power, only that plaintiff did not <u>allege</u> such. In any event, an individual defendant may be held liable under § 296(6) of the NYSHRL for aiding and abetting an employer's violation of the laws "if he participates in the conduct giving rise to the discrimination claim," <u>Schanfield v. Sojitz Corp. of Am.</u>, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009), "even if that defendant has neither an ownership interest nor the power to hire and fire," <u>Perks v. Town of Huntington</u>, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003). Here, the Complaint alleges that Nylund knew about the harassment faced by Wahl and took steps to further that harassment in the purported interest of the Company and failed to take steps to protect plaintiff. See Complaint, ¶ 24, 56-61, 64-65, 76, 86, 116, 119. For example, the Complaint alleges that Nylund treated plaintiff differently because she was a single mother (Compl, ¶ 24), told her to make herself "more available" to Trinagel, a serial harasser, after he complained that plaintiff evaded him (Compl. ¶ 64-65), instructed plaintiff to return to her office after plaintiff advised her about harassing behavior against her because complaining about it was a waste of time (Compl. ¶ 76), recommended that plaintiff forfeit money to an individual about whom Nylund herself told plaintiff was dangerous, and forced plaintiff to meet with such individual (Compl. ¶ 86).

2.     The Complaint Adequately Pleads a Claim For Hostile Work Environment

"There is no 'magic' threshold number of harassing incidents that are required. . . to demonstrate a hostile work environment. Rather, a hostile work environment is determined by all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Levitant v. City of N.Y. Human Res. Admin.</u>, 625 F. Supp. 2d 85, 97 (E.D.N.Y. 2008) (internal citations and quotations omitted).

**WARSHAW BURSTEIN, LLP**

The Honorable Judge Richard J. Sullivan
December 7, 2015
Page 3

Because of length limitations, with apologies, we respectfully request the Court to consider the companion letter responding to the SSI application on this subject.

Accordingly, plaintiff's claim for a hostile work environment was adequate.

    3.    <u>The Complaint Adequately Pleads a Claim For Constructive Discharge</u>

The standard for constructive discharge is when an employer, rather than discharging an employee directly, intentionally creates a work atmosphere so intolerable that the employee is forced to quit involuntarily. <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 229 (2d Cir. 2004). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." <u>Id</u>. When specific intent cannot be proven, the plaintiff must merely "demonstrate that the employer's actions were 'deliberate' and not merely 'negligent or ineffective.'" <u>Id.</u> at 229-230.

Because of length limitations, with apologies, we respectfully request the Court to consider the companion letter responding to the SSI application on this subject.

    4.    <u>The Complaint Adequately Pleads a Claim For Retaliation</u>

The Complaint alleges that Nyland retaliated against Plaintiff by moving her to a smaller office (Compl. ¶ 65), and it also alleges that Nyland later told plaintiff that she was being placed on warning about losing her position in order to retaliate against her for reporting the myriad instances of hostile work environment and discrimination and that the alleged basis for her firing of insubordination was merely pretextual (Compl. ¶ 119). Notwithstanding Nylund's contentions, these are certainly proper bases for a retaliation claim. <u>See</u>, e.g., <u>Timothy v. Our Lady of Mercy Medical Center, Inc.</u>, 2004 WL 503760, *6, No. 03 Civ. 3556 (RCC) (March 12, 2004, S.D.N.Y.) (holding that Plaintiff suffered an adverse employment action where Defendant reassigned her to a smaller office). As to the threat of termination, taken in the context of the harassing environment, a jury may certainly conclude that such threat at firing was retaliation against the Plaintiff for complaining to her, and this would constitute an adverse employment action. <u>Tse v. UBS Fin. Servs.</u>, 568 F. Supp. 2d 274, 290 (S.D.N.Y. 2008) (holding that "the jury was entitled to find that the threat of termination combined with . . . burdensome conditions of employment was sufficient to constitute an adverse employment action").

Plaintiff has made a prima facie showing for her NYSHRL claims for hostile work environment, constructive discharge and retaliation and presented issues of fact that are only appropriately determined by a jury.

                                                                                                 Respectfully submitted,

                                                                                                 Martin R. Lee

{917617.1 }